UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
JUN 17 2016
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) 4:16CR250 RWS |
| MARK A. GREAVES, | ) ) |
| Defendant. | ) ) |

## INFORMATION

### COUNT I
### OBTAINING A CONTROLLED SUBSTANCE BY FRAUD OR FORGERY
### Title 21, United States Code, Section 843(a)(3)

The United States Attorney charges that:

1.  At all relevant times, Mark A. Greaves (Greaves), a resident of St. Louis County, Missouri, was a pharmacist licensed by the Missouri Board of Pharmacy to practice pharmacy in the state. Until December, 2015, he was the pharmacist in charge at a Dierbergs pharmacy located in Fenton, Missouri.

2.  As the pharmacist in charge, Greaves was responsible for the day to day management of the pharmacy, including the proper compounding, preparation, and dispensing of prescription drugs; the proper storage and security of prescription drugs, including controlled substances; and the supervision of several pharmacy technicians.

3.  Certain prescription drugs are defined by federal and state law as controlled substances, which are drugs that have some potential for abuse or dependence. Controlled substances are placed into one of five schedules, based on the potential for abuse and the severity

1

of the effects if a person abuses the drug. Of the controlled drugs that can legally be prescribed, Schedule II drugs have the highest potential for abuse because of the risks of severe psychological or physical dependence. Oxycodone and hydrocodone are Schedule II drugs.

4. Alphrazolam (Xanax) is a Schedule IV drug, while Fioricet is a non-controlled drug, which can only be obtained with a prescription.

5. Pharmacists may only dispense medication pursuant to a "prescription" or "prescription drug order" from an authorized prescriber for a specific patient. Under Missouri law, a pharmacist is not an authorized prescriber.

6. When the Dierbergs pharmacy acquired drugs from wholesalers, the type of drug, strength of the drug, and quantity of the drug were entered into the pharmacy computer. At any given time, the quantity in the computer should match the drugs actually in the pharmacy. At set intervals, the actual drugs on hand were audited and compared to the quantities in the computer. If there was a shortage or overage in the physical inventory, the reason for the discrepancy had to be determined and reported.

7. From in or about mid-2014 to in or about December 2015, Greaves devised and executed a scheme to obtain without a prescription controlled drugs, such as oxycodone, hydrocodone, and the non-controlled drug Fioricet.

8. Initially, Greaves removed Fioricet from bottles in the pharmacy and consumed the Fioricet at the pharmacy. He then switched from stealing Fioricet to stealing oxycodone and hydrocodone from bottles in the pharmacy. On some occasions, Greaves stole full bottles of controlled substances and took them to his home. He concealed the thefts from the pharmacy staff.

9. In order to continue his drug thefts, Greaves devised a method to avoid detection of the thefts and the discrepancy between the physical inventory and the drug quantities listed in the pharmacy computer. Greaves determined that falsifying the drug quantities listed on the computer was a way to conceal the drug thefts. By so doing, Greaves was able to obtain controlled substances--at least 1400 pills--without a prescription for many months.

10. On a number of occasions, pharmacy technicians told Greaves that there were shortages and overages in the physical drug inventory. Greaves told the technicians that the discrepancy was likely the result of a technician mistakenly giving a patient more pills than prescribed or the drug wholesaler had not delivered the drugs to the pharmacy. Greaves would then instruct the technicians to change the quantities in the computer to match the physical inventory.

11. Further, Greaves falsified the quantities in the computer for drugs that he was not stealing. He wanted to avoid an audit that would detect the thefts and that would have resulted in the denial of his access to the controlled substances in the pharmacy. Falsifying the quantities in the computer became frequent and routine for Greaves and the pharmacy staff, at his direction.

12. In or about June 2015, in St. Louis County, within the Eastern District of Missouri,

**MARK A. GREAVES,**

the defendant herein, did knowingly and intentionally acquire and obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, and subterfuge, that is, he stole oxycodone from the Dierbergs Pharmacy and thereafter concealed the theft by falsifying the inventory in the pharmacy computer.

All in violation of Title 21, United States Code, Section 843(a)(3).

                        Respectfully submitted,

                        RICHARD G. CALLAHAN
                        United States Attorney

                        */s/ Dorothy L. McMurtry*
                        DOROTHY L. McMURTRY, #37727MO
                        Assistant United States Attorney
                        111 South 10th Street, Room 20.333
                        St. Louis, Missouri   63102
                        (314) 539-2200

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| EASTERN DIVISION | ) |
| EASTERN DISTRICT OF MISSOURI | ) |

I, Dorothy L. McMurtry, Assistant United States Attorney for the Eastern District of Missouri, being duly sworn, do say that the foregoing information is true as I verily believe.

*Dorothy L. McMurtry*
DOROTHY L. McMURTRY, #37727MO

Subscribed and sworn to before me this __6__ day of June, 2016

*Gregory Linhares*
CLERK, U.S. DISTRICT COURT

By: *Elizabeth Kirkland*
DEPUTY CLERK